MYERS *et al. v.* MERCHANTS' NAT. BANK *et al.*

(*Supreme Court, Special Term, New York County.* August, 1891.)

PLEDGE—REHYPOTHECATION—RIGHTS OF PLEDGEOR.

Where the owner of securities delivers them to a broker as collateral for the payment of certain notes, and the broker converts them to his own use, and pledges them with other securities to one who takes them in good faith, the owner is not entitled, as against such holder, to a preliminary injunction forbidding their sale, but only to demand that the other securities belonging to the broker, and pledged at the same time, shall be first sold, and that before his own are sold he shall be given reasonable notice, and be furnished with an account of the loans and the securities pledged, in order that he may, if he so desires, exercise his right of subrogation by paying the indebtedness in full.

At chambers. Action by Herman Myers and others against the Merchants' National Bank and Abraham Backer, and Benjamin F. Einstein, as assignee of defendant Backer, to enjoin the sale of 163 shares of stock of the National Bank of Savannah, and to marshal of assets, and for other relief. Plaintiffs alleged that they delivered the stock to the defendant Backer, who was a note broker and dealer in commercial paper, on the understanding that it was to be used only as collateral to secure the payment of such notes as he should procure to be discounted; that Backer converted the stock to his own use, without the knowledge of the plaintiffs, by pledging it to the Merchants' National Bank, with other securities of his own, to secure the payment of a loan to himself personally; and that the securities so pledged to the bank were ample, aside from the plaintiffs' stock, to secure the repayment of the loan. Plaintiffs moved to continue an injunction theretofore granted.

*Guggenheimer & Untermeyer,* for plaintiffs. *Burrill, Zabriskie & Burrill,* for defendant bank. *Anthony R. Dyett,* for defendant Einstein.

O'BRIEN, J. The following are well-established principles, which it seems to me are applicable to this case: *First.* An honest purchaser or *bona fide* holder of collateral that has been pledged by one who has converted it obtains a good title, and may be protected as against the real owner, who has made the perpetration of the fraud possible. *Second.* Such innocent holder will, however, be allowed to use his security thus converted only in such manner and to such an extent as, while his own interest will be secured, will operate also to the protection of the original owner. *Third.* If one party has a lien on or interest in two funds for a debt, and another party has a lien on or an interest in only one of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund in the first instance for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, whenever it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund. Story, Eq. Jur. § 633. There being no denial in this case but that the securities owned were fraudulently converted by Backer and pledged with the defendants, the application of the principles above would give to the banks, who in good faith loaned money on the strength of the securities, the right to have the same applied to the payment of their indebtedness; but, so far as the court can, it should be in such a manner as, if possible, to protect the interests of the plaintiffs, who claim to be the real owner of the securities. In the effort, however, to protect the rightful owner, or, in this case, the plaintiffs' rights in respect to the collat-

·eral pledged, the court has no power to make such a disposition or order as would impair the rights of the bank or prejudice its position as a *bona fide* purchaser for value of the securities which it is entitled to hold and dispose ·of in any way it may deem necessary under the contract with Backer, to assure the payment of the moneys advanced. There is no suggestion but that the defendant bank is amply responsible for the value of the securities claimed by plaintiffs. Having received the securities in good faith, without notice of any defect in Backer's title, they have the right to have their debts paid when ·due, and, in default, to sell all the securities held by them, or so much thereof as is necessary to pay the amount due on the loans made upon the faith of the ·securities. It is true that the pledgee of collateral securities which have been converted by the pledgeor has no right, as against the true owner, to hold them or their proceeds for the payment of another debt than that for which they were pledged.

In this case, one of the questions at issue is as to the extent of the loans for which plaintiffs' securities were pledged by Backer; the banks claiming that, in addition to the specific loans made at the time when the securities were delivered to the bank, they had an agreement with the pledgeor under the terms of which, for all subsequent advances, any surplus that might arise after payment of the original loans for which the securities were pledged should be applied to the payment of any such subsequent loans or indebtedness. On the other hand, plaintiffs claim that the defendants have no right to apply any portion of their securities for any indebtedness other than the particular loans for which their securities were pledged. Upon a motion of this kind, it will not do to conclude the issues raised in plaintiffs' favor. As ·to the nature of plaintiffs' securities, there is no allegation in the complaint ·or affidavits "that there is anything peculiar in the character of the securities, that they cannot be readily replaced, nor that there is any difficulty in showing their market value," (*Park* v. *Musgrave*, 2 Thomp. & C. .573;) and to meet any such claim of irreparable injury, as suggested upon the argument, the .defendants offer to hold the stock until the further order of the court, or to surrender the same to the plaintiffs upon their paying to them or into any trust company the value of the securities as alleged, the moneys to be held ·as a substitute for the stocks, and subject to all the rights and remedies of all parties. This offer the plaintiffs can avail themselves of. In reference to the suggestion that the other securities should be first sold, it has been made to appear that some of these were likewise diverted, and that the real owners have given notice to the Central National Bank of their title thereto.

Upon all the facts, therefore, I am of the opinion that the injunction as originally granted was too broad. What the plaintiffs are entitled to is that there should be no appropriation of the proceeds of their securities, when sold, to any indebtedness of Backer's for which the same were pledged, until the other securities which were owned by Backer should be first applied to the payment of such indebtedness, and then, if any surplus should arise, that the same should be paid over to the plaintiffs. In determining the mode of collecting or selling, while the court should not go to the extent of requiring the defendants to give notice of the sale of the other collaterals pledged, I think that the plaintiffs' securities should be separated from such other collaterals, and should only be sold upon notice to the plaintiffs. I am also of opinion ·that, before proceeding to do more than collect the notes as they fall due, the banks should furnish a statement of account between Backer and themselves, showing what loans Backer made, and upon what securities, to the end that plaintiffs may have the privilege, should they so elect, upon the payment of the bank's claim in full, to take proceedings in order to be subrogated to the rights of the bank. The plaintiffs in the sale of the other collaterals cannot be injured, for the manner and the time when such collaterals can be sold has been clearly pointed out in the case of *Wheeler* v. *Newbould*, 16 N. Y. 396.

My conclusions, therefore, are that, as to the collaterals other than those claimed by plaintiffs, no injunction should be granted which would prevent the defendants from collecting the same as they mature, nor thereafter from selling the same pursuant to the terms of their agreement with Backer, without notice to the plaintiffs. Nor should it prevent the collection of the Muscogee Company note, nor prevent the sale of the securities claimed by plaintiffs, provided they give a reasonable notice of the time and place of such sale to the plaintiffs, to the end that they may, if they so desire, upon such sale, purchase their own securities; such sale, however, not to take place until the defendants have furnished the plaintiffs with an account of the loans and the securities pledged in payment thereof. The order should, however, contain an injunction preventing the appropriation of the moneys to the payment of any indebtedness of Backer until such time as it can be determined what is the amount for which the securities were pledged, and what is the amount of the other securities which should be first applied to the extinguishment of the bank's indebtedness. Ordered accordingly.